J-S25013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
      v.   :
  :
  :
CHARLES GHEE   :
  :
      Appellant   :   No. 559 EDA 2019

Appeal from the Judgment of Sentence Entered January 18, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002606-2018

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:       **FILED SEPTEMBER 15, 2021**

Appellant, Charles Ghee, appeals from the judgment of sentence of an

aggregate term of five years' probation, imposed after he was convicted of

simple assault, 18 Pa.C.S. § 2701(a), recklessly endangering another person

("REAP"), 18 Pa.C.S. § 2705, and endangering the welfare of a child

("EWOC"), 18 Pa.C.S. § 4304(a)(1). We affirm.

The trial court summarized the facts of this case as follows:

> On January 2, 2018, Appellant, after getting off work, arrived at
> Complainant's home in the city and county of Philadelphia.
> Complainant had finished feeding their child upon Appellant's
> arrival. Appellant was handed the child while Complainant
> continued to have a conversation on the cell phone. Complainant
> specifically told Appellant not to feed the child because the baby
> had just been fed. After being told this[,] Appellant and
> Complainant got into [a] verbal argument about feeding the baby.
> Appellant gave the baby back to Complainant and Complainant
> proceeded to her bedroom. Appellant followed Complainant to her

---

[*] Retired Senior Judge assigned to the Superior Court.

bedroom and punched her in the eye and lip.[1]  Complainant also testified that Appellant attempted to choke her to the point of urination.  During the altercation, the child was present and[,] at some point, thrown on the bed.   Following the altercation, Complainant went to the hospital for treatment, where she w[a]s given an[] ice pack, and to the Philadelphia Police Department to give her statement and have photographs taken of her injuries.

TCO at 3.

The trial court also set forth the following procedural history of this matter:

On November 2, 2018, [Appellant] waived his right to a jury [trial] and proceeded to trial before this court.  During the waiver trial[,] this court found Appellant guilty of simple assault, [REAP], and [EWOC].

On January 18, 2019, Appellant was sentenced to five (5) years' probation on the charge of [EWOC], two (2) years' probation on the charge of simple assault, and two (2) years' probation on the charge of [REAP].  The probations are to run concurrent to one another for a total of five (5) years' probation to be supervised by the domestic violence unit.  Additionally, this court ordered Appellant to participate in one hundred and twenty (120) hours of community service, attend anger management classes, and attend batterers['] in[ter]vention classes.  There is also a stay[-]away order in effect and random urinalysis to be done.

On February 19, 2019, Appellant filed a timely notice of appeal from his January 18, 2019 judg[ment of sentence].[2]  On April 4,

_____

[1] Complainant was holding the baby when Appellant punched Complainant in the eye and lip.  **See** Trial Court Opinion ("TCO"), 12/11/20, at 4; Appellant's Brief at 13; Commonwealth's Brief at 2.

[2] On its face, Appellant's notice of appeal appears to be untimely.  However, the thirtieth day from Appellant's January 18, 2019 judgment of sentence fell on Sunday, February 17, 2019.  **See** Pa.R.A.P. 903(a) (stating that the notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken").  Further, the next day — Monday, February 18, 2019 — was President's Day.  Because we omit weekends and holidays from our
*(Footnote Continued Next Page)*

- 2 -

2019, this court ordered Appellant to file a concise [s]tatement of [e]rrors [c]omplained of on [a]ppeal pursuant to Pa.R.A.P. 1925(b) on or before May 3, 2019. On April 24, 2019, Appellant's counsel filed a motion for extension of time. During this time, this court was made aware that the notes of testimony from the trial were unavailable and could not be made available because the court reporter was no longer an employee of the City of Philadelphia. After numerous additional motions and extension[s], Appellant's counsel filed a proposed statement in absence of [a] transcript pursuant to [Rule] 1923 on April 24, 2020. On July 23, 2020, the Commonwealth filed a response to Appellant's [p]roposed [s]tatement in [a]bsence of [a] [t]ranscript pursuant to [Rule] 1923. On July 30, 2020, this court accepted Appellant's [Rule] 1923 statement into the record and amended it to incorporate the pre-sentence investigation report, mental health evaluation, and prior record score.[3] On September 21, 2020, Appellant filed the [s]tatement of [m]atters [c]omplained of on [a]ppeal.[4]

***Id.*** at 1-2.

---

computation of time, Appellant timely filed his notice of appeal on Tuesday, February 19, 2019. ***See*** 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

[3] The docket does not reflect that the trial court accepted and amended Appellant's Rule 1923 statement on July 30, 2020, nor does the record contain an amended Rule 1923 statement. Nevertheless, the trial court sets forth the relevant facts of the case in its Rule 1925(a) opinion, and we rely on those findings. ***See*** TCO at 3 (citing to Appellant's "Statement of Evidence" and referring to facts added by the Commonwealth in its response).

[4] According to Appellant, "[o]n August 28, 2020, at a 'Status of Appeal' hearing, the [trial court] stated, on the record, that [Appellant] had sixty (60) days from August 28, 2020, to file a [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal." Appellant's Brief at 7. Appellant does not provide a citation to the record to support this assertion. However, given the problems Appellant faced with procuring the trial transcript, and because the trial court and the Commonwealth do not contest the timeliness of Appellant's concise statement, we accept Appellant's statement as timely filed.

Appellant raises one question for our review:

Did the trial court err when it found that there was sufficient evidence to prove, beyond a reasonable doubt, that Appellant … was guilty of the criminal offense of [EWOC] (18 Pa.C.S.[] § 4304(a)(1) (M1)) (Bill of Information – Count 6), as there was insufficient evidence to prove that [Appellant] knowingly endangered the welfare of a child by violating a duty of care, protection or support[?] According [to] the Commonwealth's evidence adduced at trial, [Appellant] and [Complainant] got into an argument about feeding their baby. [Appellant] gave the baby back to [Complainant]. [Complainant] went into her bedroom and [Appellant] followed her there and punched her in the eye and lip. There was no evidence however, that [Appellant] knowingly committed any of the acts defined in 18 Pa.C.S.[] § 4304(a)(1) (M1), with regard to his baby[.]

Appellant's Brief at 4 (unnecessary capitalization omitted).

Appellant challenges his EWOC conviction, arguing that "there was insufficient evidence to prove that [he] knowingly endangered the welfare of a child by violating a duty of care, protection or support." *Id.* at 10. He says that "there was no evidence adduced at trial that [Appellant] *knowingly, or at all*, committed any of the acts defined in 18 Pa.C.S. § 4304(a)(1), with regard to his baby. While [he] punched the mother of their baby in her eye and lip while she was holding their baby, he did nothing to physically injure the baby." *Id.* at 13 (emphasis in original). He also points out that "there was no evidence that the baby was injured *at all*." *Id.* (emphasis in original). He claims that "[t]he incident … took place over a very brief period of time. [Appellant's] altercation with [Complainant] had nothing to do with their baby and the baby['s] being 'thrown on the bed' was at most incidental and not a knowing endangerment of the baby." *Id.* at 14. According to Appellant, "the

- 4 -

trial court record is absent [of] any indication that he had any intention of causing injury to their baby or, as is required by the statue, 'knowingly endanger[ing] the welfare of the child by violating a duty of care, protection or support.'" **Id.** at 15.

At the outset, we recognize that:

A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Teems**, 74 A.3d 142, 144-45 (Pa. Super. 2013) (citation omitted).

Further, EWOC is defined as follows:

A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S. § 4304(a)(1).

The crux of Appellant's argument is that he did not knowingly endanger the welfare of the baby. Section 302(b) of the Pennsylvania Crimes Code provides that:

(2) A person acts knowingly with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b).

> Moreover,
>
> [t]his Court has employed a three-prong test to determine whether the Commonwealth's evidence is sufficient to prove that a defendant knowingly violated a duty of care under Section 4304(a)(1):
>
> > (1) the accused must be aware of his or her duty to protect the child; (2) the accused must be aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused either must have failed to act, or must have taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Sebolka*, 205 A.3d 329, 337 (Pa. Super. 2019) (citation

omitted).

> No relief is due. As the trial court aptly determined:
>
> It is undisputed that Appellant knew he had a duty to the child as the biological parent. … Appellant knew that initiating and participating in a physical altercation with the child's mother while the child was in her arms could in fact threaten the child's welfare. Appellant chose to attack Complainant by choking and punching her to the point of urination. Appellant very easily could have missed Complainant and caused injury to the child.[5] Appellant took the altercation so far that Complainant had to throw the child on the bed for protection and safety. The child shared by Appellant and Complainant was still young and could not simply leave the bedroom during the altercation. The child is dependent

---

[5] We add that, by punching and choking Complainant, Appellant also could have caused Complainant to drop the baby.

on both parents not only [for] her basic needs but also [for] protection and safety.

The duty a parent is expected to perform is to prevent any harm to their child[.] Appellant did the exact opposite of that by putting his child in harm's way.

TCO at 4. We agree with the trial court's analysis. Appellant had a duty to protect the baby as the baby's parent, and he was aware that Complainant was holding the baby when he chose to punch Complainant in the face and attack her. *See* footnote 1, *supra*. It is obvious that attacking someone that is holding a baby could result in the baby's being dropped or injured. Thus, the trial court reasonably inferred that Appellant knowingly placed the baby in circumstances that threatened the baby's welfare and that he took no action to protect the baby. *Accord* Commonwealth's Brief at 7 ("[Appellant] not only knew that the child was in circumstances that could threaten her physical and psychological welfare, but it was [Appellant] himself who actively created the circumstances that endangered the child."); *see also Teems*, 74 A.3d at 144 ("When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner.").

Further, the fact that, fortunately, the baby was not injured does not warrant Appellant any relief. This Court has explained:

The language of [Section 4304(a)(1)] requires that the Commonwealth prove that the accused "endangers the welfare of the child." "Endanger" is defined as "put[ting] (someone or something) at risk or in danger." THE OXFORD AMERICAN DICTIONARY 561 (2001). "Risk" is defined as "a situation involving exposure to danger." *Id.* at 1470. But the statute does not require the actual infliction of physical injury. Nor does it state

a requirement that the child or children be in imminent threat of physical harm.  Rather it is the awareness by the accused that his violation of his duty of care, protection and support is "practically certain" to result in the endangerment to his children's welfare, which is proscribed by the statute.  *See* 18 Pa.C.S. § 302(b)(2).

***Commonwealth v. Wallace***, 817 A.2d 485, 491-92 (Pa. Super. 2002).  Thus, the fact that the baby was not physically injured is immaterial.  Accordingly, we reject Appellant's challenge to the sufficiency of the evidence underlying his EWOC conviction and affirm his judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/15/2021*